JEFFERSON B. SESSIONS III
Attorney General
JOHN M. GORE
Acting Assistant Attorney General
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair Housing Program
ALAN A. MARTINSON
Trial Attorney
     U.S. Department of Justice
     Civil Rights Division
     Housing and Civil Enforcement Section
     950 Pennsylvania Ave. NW – NWB
     Washington, D.C. 20530
     Telephone: (202) 616-2191
     Facsimile: (202) 514-1116
     Email: alan.martinson@usdoj.gov
NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
JOANNA HULL
Assistant United States Attorney
Chief, Civil Rights Section
KATHERINE M. HIKIDA (Cal. Bar No. 153268)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-2285
     Facsimile: (213) 894-7819
     E-mail: katherine.hikida@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>DANIEL BELSHAW,<br><br>        Defendant. | No. 2:18-cv-2993<br><br>COMPLAINT |

1

Plaintiff, United States of America ("United States"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.  The United States brings this action under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against Defendant Daniel Belshaw ("Defendant") for violating the SCRA's prohibition against imposing an early termination charge when a servicemember terminates a residential lease upon receipt of permanent change of station ("PCS") orders or orders to deploy with a military unit for at least ninety days.

2.  The purpose of the SCRA is to provide servicemembers with certain legal protections so that they can devote their entire energy to the Nation's defense.  One of those protections is the right to terminate a residential lease under certain circumstances when relocation is necessitated by military service.

3.  A landlord's imposition of an early termination charge when a servicemember terminates a residential lease pursuant to the SCRA violates that servicemember's federally protected right to an early termination without penalty.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of the claims in this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 50 U.S.C. § 4041.

5.  Venue is proper in the Central District of California, pursuant to 28 U.S.C. § 1391(b), because the rental property at issue is located in the Central District of California.

## PARTIES

6.  Plaintiff United States seeks declaratory, injunctive, monetary, and other relief as appropriate against Defendant Belshaw.

7.  At all times relevant to this Complaint, Defendant Belshaw owned the townhouse located at 1749 E. Bilbao Drive in Santa Maria, California.

## FACTUAL ALLEGATIONS

8.  Lt. Joseph Paetz was first commissioned as an officer in the United States

Air Force in the fall of 2015.

9. Pursuant to his commission, Lt. Paetz received military orders to attend Officer Training School at Maxwell Air Force Base in Alabama from on or about October 4, 2015, to on or about December 15, 2015.

10. In November 2015, Lt Paetz received PCS military orders, which directed him to report for duty at Vandenberg Air Force Base in Santa Barbara County, California by December 18, 2015, following his graduation from Officer Training School.

11. On or about November 16, 2015, Lt. Joseph Paetz and his wife, Jamie Paetz, entered into a six-month residential lease with Defendant, for a townhouse located at 1749 E. Bilbao Drive in Santa Maria, California.

12. The lease agreement was from December 1, 2015 to May 31, 2016.

13. Pursuant to the lease, prior to the scheduled move-in date, Lt. Paetz paid Defendant $1,950 for the first month's rent, plus the following deposits:  (1) $1,950 holding deposit used for security deposit; (2) $95 key deposit; and (3) $1,500 refundable pet deposit ($500 for each of three dogs).

14. The lease contained the following provisions in § 4.B:

"This will be a Military Clause lease, that said, this lease requires a 60 day notice to vacate for both tenant and landlord.

Note:  This lease requires 60 day notice (both Landlord and Tenant) even if the lease is month to month at the time notice is given."

15. On December 16, 2015, the day after graduating from Officer Training School, the Air Force amended Lt. Paetz's military order, redirecting him to report to a new assignment at Joint Base San Antonio-Randolph, Texas, no later than December 18, 2015.

16. On December 16, 2015, Lt. Paetz and his wife notified Defendant via both telephone and email of the amended military order, provided him a copy of the amended order, and advised him that they would have to cancel their lease due to the amended order.

17. Lt. Paetz conceded that he would have to forfeit $3,900 ($1,950 for December's rent, and another $1,950 for January's rent) for a house he would never occupy. Lt. Paetz did request, however, that the refundable pet deposit be returned because he and his wife never occupied the premises or even received the house keys from Defendant.

18. On December 16, 2015, Defendant replied via email, confirming receipt of the lease termination notice and the amended military order:

"Per the lease, there is a 60 day notification period which is enforced even on Military Tenants also. You are getting out of a 6-month lease, but we have decided to use the initial deposited funds to cover for the 60 day notice . . . Changing your occupation at such a late date is surprising and baffling, but in the end we don't feel we should have to [sic] burden that change of agenda on our end . . ."

19. On December 16, 2015, in a subsequent email to Lt. Paetz's wife, Defendant stated the following:

"The Service Member Civil Relief Act [sic] covers you for getting out of the lease, which has been granted. But does not get you out of the 60 day notice obligation you agreed to (in the lease) . . . and we went over verbally. So, I agree you should be refunded the pet deposit . . . but you will have to pay the 60 day notification first . . ."

In the same e-mail, Belshaw informed Ms. Paetz that the (unspecified) amount of the "60 day notification cost" would be more than the $1,500 pet deposit, and therefore, he was entitled to retain both the pet and key deposits.

20. In May 2016, Lt. Paetz and his wife consulted with an Air Force military legal assistance attorney, who contacted Belshaw and requested that Belshaw refund the Paetzs' pet and key deposits.

21. To date, Lt. Paetz and his wife have not received a refund of any portion of the $1,595 in pet and key deposits, all of which the SCRA required Belshaw to

4

refund.  Thus, Belshaw retained a total of $5,495 from a servicemember and his wife who never moved in.

22.    On October 12, 2016, the Department of Justice notified Defendant that it was opening an investigation into his refusal to return Lt. Paetz's deposits and his policies and practices with regard to compliance with the SCRA and requested certain information from him within thirty days.

23.    On May 20, 2017, Defendant finally provided a partial response to the Department of Justice's information request.  In his response, Defendant claimed that Lt. Paetz was not entitled to SCRA protections because he did not request that they be included in the lease.  Defendant also stated that he "ha[s] two military members on the same block….both have a 'Military clause' covering them in case they get a change in orders."  Defendant further stated that "I've had Military members leave their leases before due to SCRA covered issues and change in their orders."

24.    On July 25, 2017, Defendant provided a copy of the "Military Clause" that he "generally used for a Military Tenant when requested."  The clause states that "Tenant agrees to pay $870.00 (e.g., one-half month's rent) for the early termination."

**CLAIM FOR RELIEF**

**<u>(VIOLATION OF THE SCRA)</u>**

25.    Plaintiff United States realleges the allegations contained in paragraphs 8 through 25 above.

26.    The SCRA provides that, "[t]he lessee on a [residential] lease . . . may, at the lessee's option, terminate the lease at any time after . . . the date of the lessee's military orders."  50 U.S.C. § 3955(a)(1).  This option applies to servicemembers who, "while in military service, execute[ ] the lease and thereafter receive[ ] military orders for a permanent change of station[.]"  50 U.S.C. § 3955(b)(1)(B).

27.    Termination may be made "by delivery by the lessee of written notice of such termination, and a copy of the servicemember's military orders, to the lessor."  50 U.S.C. § 3955(c)(1)(A).  Termination of leases involving monthly rent payments "is

5

effective 30 days after the first date on which the next rental payment is due and payable after the date on which the [termination] notice…is delivered." 50 U.S.C. § 3955(d)(1). "The lessor may not impose an early termination charge, but any taxes, summonses, or other obligations and liabilities of the lessee in accordance with the terms of the lease, including reasonable charges to the lessee for excess wear . . . that are due and unpaid at the time of termination of the lease shall be paid by the lessee." 50 U.S.C. § 3955(e)(1).

28.     Defendant refused to refund Lt. Paetz's refundable pet deposit, asserting that Lt. Paetz was required to pay a "60 day notification cost" before Defendant would return the deposit. Defendant also did not refund Lt. Paetz's key deposit for the same reason. Defendant's demand for payment of a "60 day notification cost" exceeded what the SCRA permits landlords to require for early termination. Defendant's retention of $1,595 in pet and key deposits therefore constituted the imposition of an early termination charge in violation of the SCRA.

29.     The language Defendant used in the "Military Clause" for leases to servicemembers facially violates the SCRA by imposing an early termination charge on servicemembers who terminate their leases pursuant to the SCRA.

30.     Defendant's imposition of an early termination charge when Lt. Paetz exercised his right to terminate his lease raises an issue of significant public importance.

31.     Lt. Paetz is a "person[s] aggrieved" pursuant to 50 U.S.C. § 4041(b)(2) and has suffered damages as a result of Defendant's conduct.

32.     Defendant's conduct was intentional, willful, and taken in disregard for the rights of servicemembers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter an Order that:

1.     Declares Defendant's conduct violated the SCRA;

2.     Enjoins Defendant, his agents and employees, and all other persons and entities in active concert or participation with him from:

    a.     imposing a sixty-day notice provision or any other notice provision

that is inconsistent with the SCRA on servicemembers who lawfully terminate their leases under the SCRA;

b.    including a provision in any residential lease that requires servicemembers who terminate the lease in accordance with the SCRA to forfeit any deposit or pre-paid amount beyond what is permitted under the SCRA, or pay any other early termination charge;

c.    imposing an early termination charge when a protected servicemember terminates a residential lease early, in violation of the SCRA, 50 U.S.C. § 3955;

d.    failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Lt. Paetz and his wife to the position they would have been in but for Defendant's unlawful conduct; and

e.    failing and refusing to take such affirmative steps as may be necessary to prevent the recurrence of any unlawful conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful conduct;

3.    Awards appropriate monetary damages to Lt. Paetz and his wife pursuant to 50 U.S.C. § 4041(b)(2);

4.    Assesses civil penalties against Defendant in order to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3); and

5.    Grants such other and further relief as the court deems just and proper.

Dated:  April 10, 2018

Respectfully submitted,

JEFFERSON B. SESSIONS III
Attorney General

NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
JOANNA HULL
Assistant United States Attorney
Chief, Civil Rights Section

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

 /s/ Sameena Shina Majeed
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement
Section

 /s/ Katherine M. Hikida
KATHERINE M. HIKIDA
Assistant United States Attorney

 /s/ Elizabeth A. Singer
ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair
Housing Program

 /s/ Alan A. Martinson
ALAN A. MARTINSON
Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

8